UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROGER HORTON,

     Plaintiff,

v.                                        Case No. 8:21-cv-435-WFJ-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

     Defendant.
_____/

## REPORT AND RECOMMENDATION

     The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Disability Insurance Benefits (DIB).  For the reasons discussed below, I respectfully recommend that the Commissioner's decision be affirmed.

I.

     The Plaintiff was born in 1960, completed high school, and has past relevant work experience as an electrician and a salesperson.  (R. 23, 71, 180).  In January 2019, the Plaintiff filed an application for DIB, alleging disability as of September 2017.  (R.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing the former Commissioner, Andrew M. Saul.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Mr. Saul as the Defendant in this suit.

71–92).  The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  *Id.*

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in early August 2020.  (R. 30–65, 108–09).  The Plaintiff was accompanied by a non-attorney representative at that proceeding and testified on his own behalf.  (R. 30–65).  A vocational expert (VE) also testified.  (R. 53–61).

In a decision issued in late August 2020, the ALJ found that the Plaintiff (1) had not engaged in any substantial gainful activity since his alleged onset date in September 2017; (2) had the severe impairments of depression, a mild cognitive condition, and degenerative disc disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings;[2] (4) had the residual functional capacity (RFC) to perform medium work subject to certain limitations, including—of relevance here—that he could only "understand, remember and carry out simple and routine work-related instructions" and was "able to perform non-production pace/non-assembly line pace jobs, with occasional workplace changes, occasional independent decision-making, and no responsibility for the safety of others;"[3] and (5) based on the VE's testimony, could not engage in his past relevant

---

[2] The listings are found at 20 C.F.R. pt. 404, subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits.  *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] The Plaintiff's other limitations included that he could "lift, carry, push and pull [fifty] pounds occasionally and [twenty-five] pounds frequently;" could "stand and/or walk six hours in an eight-

2

work but could perform other jobs that exist in significant numbers in the national economy—namely, laundry worker, kitchen helper, and hand packager.  (R. 15–25). In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  *Id.*

The Appeals Council denied the Plaintiff's request for review.  (R. 12–14). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5]  Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe

---

[4] hour workday;" and could "concentrate for periods of two hours on work-related tasks before requiring a break."  (R. 19–20).

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)).  Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.  42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).   In evaluating whether substantial evidence bolsters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).   While a court will defer to the Commissioner's factual findings, it will not extend such deference to her legal conclusions.   *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

III.

The Plaintiff raises five challenges on appeal: (1) the ALJ's RFC determination did not properly take into account the Medical Vocational Guidelines (also known as the "Grids") and is not buttressed by substantial evidence; (2) the ALJ erred by not deeming the Plaintiff's Lyme disease, Bell's palsy, and vision problems to be severe impairments, which would have necessitated additional limitations in both the ALJ's RFC determination and his hypothetical questions to the VE; (3) the ALJ failed to assess the persuasiveness of an evaluation conducted by one of the Plaintiff's treating physicians; (4) the ALJ incorrectly found that the Plaintiff could engage in certain occupations; and (5) the appointment of former SSA Commissioner Andrew Saul was

constitutionally defective.[6]  Upon careful review of the parties' submissions and the pertinent portions of the record, I find that the Plaintiff's challenges lack merit.

A.

As noted above, the ALJ's task at step four is to determine the claimant's RFC and his ability to perform his past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To do so, the ALJ must decide based on all the pertinent evidence of record what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  In making this finding, the ALJ must review the medical opinions of record, as well as all the claimant's medically determinable impairments and the total limiting effects of each.  *Id.* §§ 404.1520(e), 404.1545(a)(3); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

An ALJ, however, need not expressly discuss every piece of record evidence in his decision.  *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).  Instead, the ALJ need only predicate his RFC determination on the claimant's condition "taken as a whole," *Jamison*, 814 F.2d at 588, after considering all the pertinent information presented, 20 C.F.R. §§ 404.1520(e), 404.1545(a).  As long as the Court can discern from the ALJ's decision that he

---

[6] I have re-ordered and combined some of the Plaintiff's arguments for purposes of my analysis.

evaluated the relevant evidence before him, the final responsibility for deciding a claimant's RFC rests with the ALJ.  20 C.F.R. § 404.1527(d)(2).

At step five, if a claimant proves he can no longer perform his past relevant work, the Commissioner must show there are sufficient jobs in the national economy which the claimant can perform despite his impairments.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  The Commissioner can accomplish this by either applying the Grids or relying on the testimony of a VE.  *Id.* at 1360; *Stone v. Comm'r of Soc. Sec.*, 503 F. App'x 692, 694 (11th Cir. 2013) (per curiam) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir.1985)).  "The Grids provide an algorithm to determine a claimant's ability to engage in employment other than [his] past work based on factors such as [the claimant's] age, education, previous employment, and maximum physical capabilities."  *Stone*, 503 F. App'x at 694.  If a claimant's RFC coincides with the criteria listed in a rule, the Grids will provide a determination as to whether the claimant is disabled.  *Id.*; 20 C.F.R. § 404.1569.  Otherwise, the ALJ must consult a VE.  *Phillips*, 357 F.3d at 1242; *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).

In this case, as alluded to previously, the ALJ concluded that the Plaintiff had the RFC to engage in medium work with various non-exertional limitations.  (R. 19–20).  In support of this determination, the ALJ observed that while the Plaintiff had a history of low back pain and testified to pain in his tailbone area, a March 2019 consultative examination demonstrated he had a normal gait, a normal range of motion, and normal muscle strength.  (R. 20–21).  The ALJ also noted that "[o]ther

examinations showed no tenderness to palpation in [the Plaintiff's] lumbar spine" and that an MRI of the Plaintiff's back, though evidencing slight disc bulging and a small annular tear, did not reveal any disc herniations or nerve root impingements. (R. 21).

In addition, the ALJ discussed that one of the physicians the Plaintiff saw for his low back pain, Dr. James Tiesi, reported the Plaintiff had a normal objective examination and had not participated in physical therapy or pain management interventions. *Id.* Dr. Tiesi commented as well that he discussed conservative treatment options with the Plaintiff but that the Plaintiff elected not to pursue such measures. *Id.*

Along with this evidence, the ALJ cited the opinion of a state agency medical consultant, Dr. Ronald Gutierrez, that the Plaintiff could perform a full range of medium work. (R. 22). The ALJ considered Dr. Gutierrez's assessment to be persuasive in part because the record showed that despite the "slight disc bulge in [the Plaintiff's] lumbar spine," the Plaintiff had a "normal range of motion, normal strength, normal reflexes, and normal gait, as well as no tenderness to palpation." *Id.* The ALJ further found that the Plaintiff could perform his activities of daily living, which included walking his large dogs for three miles once or twice a week, swimming laps, and riding a bike. (R. 20–21).

By way of his first claim of error, the Plaintiff now argues that the ALJ's RFC determination is not adequately supported. This contention fails. As the above evidentiary recitation makes clear, the ALJ buttressed his RFC finding by citing items in the record which were derived from, among other sources, the Plaintiff's treatment

8

materials, medical opinions about his health and capabilities, and his own testimony and self-reported daily activities.  (R. 19–23).  As also referenced above, the ALJ's assessment that the Plaintiff could perform medium work was further bolstered by the assessment of Dr. Gutierrez.  (R. 22).  More broadly, a fair reading of the ALJ's decision demonstrates that he evaluated the record and the Plaintiff's condition as a whole, and that he rendered an RFC determination that properly accounted for the Plaintiff's physical limitations.

In an effort to show otherwise, the Plaintiff asserts that the ALJ's RFC finding is fatally deficient because it does not account for the Plaintiff's numerous other purported symptoms—namely, fatigue, sciatica, neuropathy, polyneuropathy, chest pain, low back pain, paresthesias and weakness, intervertebral disc degermation, arthritis due to Lyme disease, "pain in [the] joint involving [the] pelvic region and thigh," and "severely chronic possible chronic pain."  (Doc. 32 at 28).  The problem with this argument is that it misconstrues the Court's role on appeal.  While it may be true that there are items in the record suggesting the propriety of a more limited RFC, it is not the function of the Court to re-weigh the evidence at this juncture.  *Carter*, 726 F. App'x at 739 (stating that a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence") (citing *Moore*, 405 F.3d at 1211); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932

F.2d 1356, 1358 (11th Cir. 1991) (per curiam)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.") (citations omitted).  Rather, the Court's obligation is confined to analyzing whether the ALJ relied on substantial evidence and applied the proper legal standards.  *Miles*, 84 F.3d at 1400 (observing that courts must defer to the Commissioner's decision if it is supported by substantial evidence and if the Commissioner followed the appropriate legal standards); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (noting that when the Commissioner's decision is supported by substantial evidence, a court must affirm it even if the court would have reached a contrary result and even if it finds that "the evidence preponderates against" the Commissioner's decision) (internal citation and quotations omitted).  By my review, the ALJ has done so here.

The Plaintiff's argument suffers from another flaw as well.  Nowhere does he argue, much less demonstrate, that the aforementioned symptoms resulted in functional limitations not included in the ALJ's RFC determination.  *See* 20 C.F.R. § 404.1520; *see also Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 877–78 (11th Cir. 2012) (per curiam) (stating that a claimant bears the burden of showing "the effect of [an] impairment on her ability to work") (citing *McCruter v. Bowen*, 791 F.2d 1544, 1546–47 (11th Cir. 1986)).   It is well-settled in this regard that a claimant's subjective complaints alone cannot establish disability.  20 C.F.R. § 404.1529(a).  Nor does a diagnosis equate to a functional impairment or reveal its impact on a claimant's ability to work.  *Moore*, 405 F.3d at 1213 n.6 ("[T]he mere existence of . . . impairments does

not reveal the extent to which they limit [the plaintiff's] ability to work or undermine the ALJ's determination in that regard."). Instead, a claimant must show that based upon objective medical evidence, his diagnosed impairments caused disabling functional limitations. *Id.* at 1213. A claimant cannot demonstrate that an ALJ has committed reversible error simply by asserting the ALJ neglected to consider restrictions caused by the claimant's afflictions when the claimant himself does not explain how those afflictions inhibited his ability to engage in basic work activities. *Smith*, 501 F. App'x at 878–79.

Furthermore, as explained earlier, the ALJ is not required to address in his decision each and every piece of evidence in the record that may be relevant and probative. *See Stowe*, 2021 WL 2912477, at *4 ("[A]n ALJ is not required to discuss every piece of evidence, so long as the ALJ's decision is not a broad rejection and there is enough for [a court] to conclude that the ALJ considered the [claimant's] medical condition as a whole.") (citing *Dyer*, 395 F.3d at 1211). Here, it is apparent from the ALJ's decision that he thoroughly considered the pertinent evidence of record, as well as all the Plaintiff's impairments and the total limiting effects of each. (R. 19–23).

Because the ALJ's RFC determination that the Plaintiff could perform medium work is adequately supported, the Plaintiff's reliance on the Grids cannot succeed. The gist of the Plaintiff's contention in this regard is that *if* the ALJ had restricted him to sedentary or light work (as opposed to medium work), the Grids would have resulted in a finding of disability. As the predicate for this contention is absent, the Court need not consider it. The fact that an ALJ is not compelled to utilize the Grids

11

in all instances further bolsters this conclusion.  *See Phillips*, 357 F.3d at 1242; *Wilson*, 284 F.3d at 1227.

B.

As alluded to above, the Plaintiff's second challenge is that the ALJ erred at steps two and four in addressing the Plaintiff's diagnoses of Lyme disease, Bell's palsy, and vision issues.  At step two, the ALJ must conduct the "threshold inquiry" as to whether the claimant has a medically determinable impairment or combination of impairments that is severe.  *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).  The severity of an impairment in this context is "measured in terms of its effect upon [the claimant's] ability to work, and not simply in terms of [a] deviation from purely medical standards of bodily perfection or normality."  *McCruter*, 791 F.2d at 1547.  An impairment is therefore deemed to be severe only if it significantly limits a claimant's physical or mental abilities to engage in basic work activities.  20 C.F.R. § 404.1522(a).  A non-severe impairment, on the other hand, is one that does not result in such a limitation.  *Id.*  In the end, the bar for showing a severe impairment is a low one, *McCormick*, 619 F. App'x at 857 (citation omitted), and the finding of any severe impairment is enough to satisfy the step two inquiry, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) (per curiam) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Irrespective of whether an ALJ finds an impairment to be severe at step two, the ALJ is required at step four to assess all of a claimant's impairments, both severe and

12

non-severe, in determining the claimant's RFC. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam).   The ALJ's RFC analysis at step four therefore represents a more detailed evaluation of the claimant's ability to function than the one performed at step two. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citation omitted).

In this case, the ALJ addressed the Plaintiff's diagnosis of Lyme disease at step two as follows:

> The claimant has a history of Lyme disease, which was diagnosed in 2011, and which was treated with a course of antibiotics.  He reported that since his diagnosis, he has experienced intermittent episodes of headaches, difficulty with speech and memory, tingling in his limbs, and facial weakness. MRI studies of his brain showed no evidence of encephalopathy, as well as minimal white matter disease which was not thought to be related to his history of Lyme disease.  In December 2019, he reported that he stopped taking medicine for his headaches because they were gone.   He also reported that his facial numbness was exacerbated by stress and changes in barometric pressure. He testified that he has not seen a rheumatologist, but he has seen an infectious disease specialist.   There is nothing in the record indicating that he continues to have a positive Lyme disease titer, or that his history of Lyme disease with residual symptoms more than minimally affect his ability to perform basic work activities.  Therefore, out of an abundance of caution, the undersigned finds that the claimant's history of Lyme disease with its associated residual symptoms is a non-severe impairment.

(R. 18).  While the ALJ did not separately discuss the Plaintiff's Bell's palsy or vision problems at step two, he did find at this stage that—as referenced previously—the Plaintiff had the severe impairments of depression, a mild cognitive condition, and degenerative disc disease.  (R. 17–18).

The Plaintiff now maintains that the ALJ wrongly determined at step two that his Lyme disease, Bell's palsy, and vision issues were not severe.  (Doc. 32 at 8–10). This contention is unavailing.  Because the ALJ found the Plaintiff suffered from at least one severe impairment at step two, he satisfied the step two requirement and any error he committed at that step was therefore harmless.  *Burgos v. Acting Comm'r of Soc. Sec.*, 705 F. App'x 794, 803 (11th Cir. 2017) (per curiam) ("Step two is satisfied when the claimant has any severe impairment."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) ("To proceed to step three of the evaluation process, an ALJ need only conclude that an applicant ha[s] 'at least one' severe impairment.") (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)); *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (per curiam) ("If any impairment or combination of impairments . . . qualifies as 'severe,' step two is satisfied and the claim advances to step three.") (quoting *Jamison*, 814 F. App'x at 588).

Apparently anticipating this issue, the Plaintiff asserts that regardless of whether any error by the ALJ at step two was harmless, the ALJ's failure to include restrictions related to the Plaintiff's Lyme disease, Bell's palsy, and vision problems in his RFC determination and in his hypothetical questions to the VE was not harmless.  (Doc. 32 at 10).  With respect to his Lyme disease in particular, the Plaintiff highlights his history of, *inter alia*, arthritis, headaches, fatigue, polyneuropathy, chronic pain, paresthesias and weakness, numbness (specifically of the face), and pain in his joints. *Id.* at 9.  The Plaintiff further points out that a consultative examiner found him to

have a severely chronic history of Lyme disease, and that one of his treating providers, Dr. Morris Bollegraf, also observed that he had "a [history] of Bell's [p]alsy allegedly from Lyme [d]isease." *Id.* at 9–10 (citing R. 380, 433).  The Plaintiff adds as well that Dr. Bollegraf diagnosed him with a headache disorder in December 2019, and that Dr. Bollegraf referenced the Plaintiff complaining at the time of an "intermittent[ly]" "numb feeling" in his face, which could be "noxious" and "make his right eyelid close." *Id.* at 9 (citing R. 433).

Also with respect to the Plaintiff's Bell's palsy, the Plaintiff cites his hearing testimony that this condition "started working on my eyes," that "my eyes will close now" preventing me from "see[ing] anything," and that "my eyes close so frequently during the course of a day, that I don't know how I would drive or even feel to participate in most jobs without being able to see." *Id.* at 23 (citing R. 40–41, 61).  As for other problems with his vision, the Plaintiff notes only that the consultative examiner diagnosed him with "[b]ilateral vision trouble." *Id.* (citing R. 378).

The Plaintiff's contention fails on a number of levels.  To begin, as discussed above, there is substantial evidence buttressing the ALJ's RFC determination that the Plaintiff can perform medium work. Moreover, as with his prior challenge, the Plaintiff does not identify any specific functional limitations related to his diagnoses of Lyme disease, Bell's palsy, or "bilateral vision trouble" that the ALJ should have imposed.  *Moore*, 405 F.3d at 1213 n.6.

The ALJ also arguably addressed the Plaintiff's complaints about his eyelid closing in discussing the Plaintiff's Lyme disease and the records of Dr. Bollegraf.  (R.

15

18) (citing exhibit 10F/4).  Specifically, as described above, the ALJ referenced that the Plaintiff reported to Dr. Bollegraf that his facial numbness was exacerbated by stress.  *Id.*  Indeed, in the underlying record cited by the ALJ, Dr. Bollegraf described the Plaintiff's report that this numbness "can make his right eyelid close."  (R. 432).  This recitation largely reflects the Plaintiff's testimony at the hearing that Bell's palsy caused his eyes to shut.  (R. 40–41) (testifying that memories of his deceased relatives "cause[] my eyes to close" such that he "can't see anything").  Ultimately, however, the ALJ found that the Plaintiff's Lyme disease—and the associated symptom of facial numbness—was not a severe impairment, and this finding is supported by substantial evidence.  (R. 18).  The Court cannot re-weigh this evidence on review.  *Carter*, 726 F. App'x at 739; *Sims*, 706 F. App'x at 604; *Miles*, 84 F.3d at 1400.

As for the "bilateral vision trouble" recognized by the consultative examiner (R. 378), as noted above, a diagnosis alone is not sufficient to establish a functional impairment.  *Moore*, 405 F.3d at 1213 n.6.  And, as explained by the Commissioner, the examiner further determined that, with the benefit of glasses, the Plaintiff had 20/50 vision in his right eye and 20/25 vision in his left eye, and that the Plaintiff additionally "exhibit[ed] normal reflex response to direct light, indirect light, and accommodation."  (R. 379).  The Plaintiff does not explain how these findings resulted in an impairment on his ability to work, nor does he point to any medical opinion

suggesting the same.  Moreover, the ALJ found that the Plaintiff could engage in his activities of daily living, including riding a bike.[7]  (R. 20–21).

The cases upon which the Plaintiff relies in support of his position are unpersuasive.  (Doc. 32 at 24–26).  In those decisions, the ALJs either found that the claimants suffered from much more significant vision impairments and/or failed to address the necessity of vision-related restrictions despite compelling evidence that the claimants' eye issues were disabling.  *See, e.g., Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269–70 (11th Cir. 2015) (per curiam) (finding that an "evidentiary gap" in the record existed where the ALJ determined the claimant could not perform "fine detail work" and the VE did not address the extent to which blindness in the claimant's right eye and near blindness in his left eye would effect employment); *Melville v. Comm'r of Soc. Sec.*, 2008 WL 563481, at *5 (M.D. Fla. Feb. 28, 2008) (concluding that the ALJ erred by finding the claimant should "avoid tasks involving reading and studying" but did not include a visual impairment in the hypothetical to the VE); *Stubbs v. Astrue*, 2008 WL 544856, at *3 (M.D. Fla. Feb. 26, 2008) (deciding that the ALJ failed to properly evaluate the claimant's eye problems where the ALJ did not address differing evidence about the claimant's vision, including a report that the claimant's vision with glasses was 20/100 in the right eye and 20/70 in the left eye, and the claimant testified she could not read even with glasses).[8]

---

[7] I also note that the Plaintiff reported that he could drive except on his "bad days."  (R. 208).

[8] The Plaintiff's citation to *Snyder v. Commissioner of Social Security*, 330 F. App'x 843 (11th Cir. 2009) (per curiam) is likewise inapposite.  In *Snyder*, the Eleventh Circuit determined that the ALJ did not give adequate reasons for discrediting the claimant's subjective complaints of pain.  *Id.* at 847–48.  The

The Plaintiff's related claim of error that the ALJ's hypotheticals to the VE were incomplete without a limitation to account for the Plaintiff's Lyme disease, Bell's palsy, and vision issues hinges on the Plaintiff's argument directed at the ALJ's RFC determination and therefore fails as well. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (noting that an ALJ need not include findings in his hypothetical questions to the VE that he has rejected as unsupported).

C.

The Plaintiff's third challenge is that the ALJ erred by failing to evaluate the persuasiveness of an assessment rendered by one of his treating physicians, Dr. Robert McClelland. *See* (Doc. 32 at 19–22); *see also* (R. 251). As referenced above, to determine the claimant's RFC and his ability to perform his past relevant work, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or other acceptable medical sources concerning what a claimant may be able to do despite his impairments; whether the claimant is limited in his ability to perform various work activities; and whether the claimant can see,

---

Plaintiff, however, does not contend that the ALJ failed to comply with the "pain standard" here, nor has he even briefed the matter. As such, he has waived any such argument. *See Battle v. Comm'r, Soc. Soc. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (stating that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)).

hear, or use his other senses or "adapt to environmental conditions, such as temperature extremes or fumes."  20 C.F.R. § 404.1513(a)(2).

The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was.  20 C.F.R. § 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the opinion's source.  *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c.  In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors "that tend to support or contradict a medical opinion," such as whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of significance here, there is a separate category of evidence known as "[o]ther medical evidence," which "includ[es] judgments about the nature and severity of [a claimant's] impairments, medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513(a)(3); *see also Rivera v. Comm'r of Soc. Sec.*, 2021 WL 3602839, at *4 (M.D. Fla. Aug. 13, 2021) (citations omitted).  An example of this type of evidence is a statement by a

provider relative to "issues reserved to the Commissioner," such as whether a claimant is "able to perform regular or continuing work."  20 C.F.R. § 404.1520b(c)(3)(i).  An ALJ is not required to assess "other medical evidence" for persuasiveness.  *Id.* § 404.1513(3).

The Plaintiff's third challenge centers around a June 2014 letter by Dr. McClelland, which apparently was intended to assist the Plaintiff in gaining his release from a contract with a particular franchise.  (Doc. 32 at 19–22).  Dr. McClelland stated in his letter:

> This is to certify that [the Plaintiff] was seen in my clinic on [June 10, 2014].
>
> Due to medical reasons, he is unable to run [his] electrical contracting business due to persistent neurologic symptoms from an Active Lyme case, discovered [in July 2011].
>
> He has intermittent memory issues, profound fatigue and peripheral symptoms of paresthesias and weakness, rendering him unable to manage or even participate in the business.
>
> We continue to investigate causes and seek treatments, and have not made a determination of a permanent disability, but if the past three years are any indication, we may be going this way.  Despite this, his recent history is compelling and should be the basis for his release from the franchise contract.

(R. 251).  The ALJ did not evaluate the persuasiveness of Dr. McClelland's assessment in his decision.

The Plaintiff now contends that the ALJ's failure to consider Dr. McClelland's opinion renders the ALJ's decision unsupported by substantial evidence. (Doc. 32 at 22). This contention does not survive scrutiny.

As an initial matter, Dr. McClelland's assessment that the Plaintiff was unable to "run [his] electrical contracting business due to persistent neurologic symptoms from an Active Lyme case" and suffered from other infirmities which "rend[ered] him unable to manage or even participate in [his] business" (R. 251) is fairly characterized as an opinion about the Plaintiff's ability to engage in substantial gainful activity, 20 C.F.R. § 404.1520b(c)(3)(i). As such, the ALJ was not obligated to address that assessment under the new Regulations. *Jones v. Comm'r of Soc. Sec.*, 2021 WL 4352383, *5 (M.D. Fla. Sept. 24, 2021) (finding that an ALJ does not have to consider or discuss a conclusion that the claimant was unable to work because that is an issue reserved for the Commissioner) (citing 20 C.F.R. § 404.1520b(c)); *Marshall v. Kijakazi*, 2021 WL 4168107, at *4 (M.D. Fla. Sept. 14, 2021) (finding a physician's assertion that "the [claimant was] unable to work" to be a "statement[ ] on an issue reserved to the Commissioner," which, under the new Regulations, is "inherently neither valuable nor persuasive" and need not be addressed at all by the ALJ) (internal quotation marks and citations omitted) (quoting 20 C.F.R. § 404.1520b(c)).[9]

Moreover, as noted above, it is not necessary for an ALJ to address each and every piece of evidence in the record. *Stowe*, 2021 WL 2912477, at *4. That is

---

[9] The Plaintiff mistakenly relies in large part on cases interpreting the standards imposed under the old Regulations. (Doc. 32 at 19–22).

particularly true here since Dr. McClelland issued his opinion in June 2014, and the Plaintiff subsequently worked as an electrician from 2015 until his alleged onset date in September 2017.  *See, e.g., Levie v. Berryhill*, 757 F. App'x 834, 837 (11th Cir. 2018) (per curiam) ("While we have previously said that an ALJ has an obligation to explain the weight given to obviously probative evidence, treatment notes from a non-acceptable medical source that were taken five to seven years prior to the claimant's alleged onset of disability are not obviously probative.") (internal quotation marks and citations omitted).

D.

As noted above, the Plaintiff's fourth challenge takes issue with the ALJ's step five determination that the Plaintiff could engage in the occupations identified by the VE.  (Doc. 32 at 14–17).  According to the Plaintiff, the ALJ failed to satisfy his duty to address an apparent discrepancy between the VE's statements at the hearing and the Dictionary of Occupational Titles (DOT)[10] regarding these positions.  *Id.*

It is now settled law that pursuant to Social Security Ruling 00-4p, an ALJ is required to identify and resolve any apparent conflict between data in the DOT and testimony provided by a VE at an ALJ hearing.  *Washington*, 906 F.3d at 1362; *see also* Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).  As the Eleventh Circuit noted in *Washington*, "this duty is not fulfilled simply by taking the

---

[10] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require."  *Washington*, 906 F.3d at 1357 n.2.

VE at [her] word that [her] testimony comports with the DOT."  906 F.3d at 1362. Rather, the ALJ has an "affirmative obligation" to discern and reconcile any such discrepancies and to set forth his reasons for doing so.  *Id.*

An "apparent conflict" under SSR 00-4p is "more than just a conflict that is made apparent by the express testimony of the VE."  *Id.* at 1365.  Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id.*  "Apparent" in this context is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Id.* at 1366.

The ALJ's obligation to take notice of and to resolve apparent inconsistencies between the DOT and VE testimony exists both during and after the hearing and does not depend on whether they are raised by a party.  *Id.* at 1363.  "The failure to properly discharge this duty means that the ALJ's decision is not supported by substantial evidence."  *Id.* at 1362.

In this case, the ALJ engaged in a colloquy with the VE at the hearing as to whether the Plaintiff could perform jobs other than his past relevant work that exist in significant numbers in the national economy.  (R. 53–61).  In response to the ALJ's inquiries, the VE asserted that an individual with the Plaintiff's age, education, work experience, and RFC could engage in the representative occupations of laundry worker, kitchen helper, and hand packager.  (R. 57).  The VE also attested that, with

the exception of some distinctions not relevant here, her testimony comported with the DOT. (R. 60).

In his decision, the ALJ relied upon the VE's opinion at step five in concluding that the Plaintiff could perform the positions described by the VE. (R. 24). In doing so, the ALJ stated that "[p]ursuant to SSR 00-4p, . . . the [VE's] testimony [was] consistent with the information contained in the DOT." *Id.* The Plaintiff now posits that there are two discrepancies between the VE's testimony and the DOT, both of which the ALJ failed to resolve. (Doc. 32 at 14–17). I will address each in turn.

The first of these purported inconsistencies is between the Plaintiff's RFC limiting him to "non-production pace/non-assembly line pace jobs" and the "temperament" required by the jobs of laundry worker, kitchen helper, and hand packager designated by the VE. *Id.* at 14. As argued by the Plaintiff, each of these three positions demands a temperament type "R," which necessitates the ability to "perform[ ] repetitive work, or perform[ ] continuously the same work, according to set procedures, sequence, or pace." *Id.* (citing Docs. 32-1 at 7; 32-2 at 7; 32-3 at 6). The Plaintiff surmises that the jobs of laundry worker, kitchen helper, and hand packager exceed this temperament threshold because "[l]aundry and drycleaning workers tend machines during cleaning[, k]itchen workers often place dirty dishes on conveyors to dishwashing machines[, and h]and packagers start, stop, and regulate the speed of conveyors." *Id.* (citing Docs. 32-1, 32-2, and 32-3). The Plaintiff's contention fails.

I start with the fact that the information provided by the DOT relating to the jobs at issue does not include *any* requirements pertaining to temperament.  *See* DOT #361.685-018, 1991 WL 672987 (laundry worker) (G.P.O. 4th ed., rev. 1991); DOT #318.687-010, 1991 WL 672755 (kitchen helper) (G.P.O. 4th ed., rev. 1991); DOT #920.587-018, 1991 WL 687916 (hand packager) (G.P.O. 4th ed., rev. 1991).  In support of a purported temperament "R" condition, the Plaintiff instead cites a "Detailed Job Specialty Report" created by Job Browser Pro, which is a software program developed by SkillTRAN.[11]  (Docs. 32-1, 32-2, 32-3).  The Plaintiff, however, does not submit any legal authority establishing that the ALJ or the VE must consider SkillTRAN as a vocational resource, and there is at least some case law rejecting that position.  *See Olney v. Comm'r of Soc. Sec.*, 2018 WL 4760799, at *12–13 (M.D. Fla. July 30, 2018) (noting that the DOT titles for certain positions did not contain references to temperament requirements and that the claimant's "lay interpretation of the temperament codes in a Job Browser Pro report" did not undermine the reliability of the VE's opinion).

Furthermore, even accepting SkillTRAN as an acceptable source, the Plaintiff does not show that the temperament "R" restriction conflicts with a limitation to "non-production pace/non-assembly line pace jobs."  (R. 20).  Contrary to the Plaintiff's

---

[11] "Job Browser Pro is a purchasable software program that pulls information from many databases, including the DOT, the Occupational Outlook Handbook, and the Occupation Employment Statistics, among others."  *Sansom v. Saul*, 2021 WL 3476598, at *6 n.6 (M.D. Fla. June 30, 2021) (citing *Job Browser Pro*, SKILLTRAN, https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro) (last visited August 5, 2022), *report and recommendation adopted by*, 2021 WL 3205695 (M.D. Fla. July 29, 2021).

assertion, the fact that the positions of laundry worker, kitchen helper, and hand packager may generally require tending machines or using a conveyor does not speak to the pace required by those occupations.  *See Gray v. Comm'r of Soc. Sec.*, 2019 WL 2210677, at *7 (M.D. Fla. Feb. 1, 2019) ("[The claimant] offers no support for her inferential leap that [representative jobs purportedly requiring a temperament of 'R'] necessarily include fast paced or high production work goals, as distinguished from set procedures, pace or limits.").

The second alleged discrepancy upon which the Plaintiff relies is that each job cited by the ALJ requires a reasoning level that exceeds the Plaintiff's RFC's limitation to "understanding, remembering and carrying out simple and routine work-related instructions."  (Doc. 32 at 14–17).  Reasoning levels measure a claimant's ability to engage in certain basic functions related to education and require the claimant to be capable of carrying out instructions and performing mental tasks.  DOT, App'x C (4th ed. 1991), 1991 WL 688702.  Reasoning levels range from one to six, with one being the lowest and six being the highest.  *Id.*  At issue here is reasoning level two, which mandates that an individual have the ability to apply a "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  *Id.*  As explained by the Eleventh Circuit, "detailed" in this context pertains to the length of the instructions as opposed to their complexity.  *Buckwalter v. Saul*, 5 F.4th 1315, 1323 (11th Cir. 2021).

26

In *Buckwalter*, the Eleventh Circuit addressed a potential inconsistency between an RFC necessitating the ability to "understand, carry-out, and remember simple instructions" and occupations requiring a reasoning level of two. 5 F.4th at 1320–22. The court found persuasive the Fourth Circuit's reasoning in *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019), in which the court concluded there was no apparent discrepancy between a limitation to simple, routine, and repetitive tasks of unskilled work and a job with level two reasoning. *Id.* at 143. It also looked to the Eighth Circuit's holding in *Moore v. Astrue*, 623 F.3d 599 (8th Cir. 2010) that there was no direct conflict between positions with a reasoning level of two and an RFC that restricted a claimant to "carrying out simple job instructions" and "performing simple, routine, and repetitive work activity at the unskilled task level." *Id.* at 604–05. Based upon this authority, the Eleventh Circuit concluded in *Buckwalter* there was no apparent inconsistency between an RFC limited to "simple instructions" and a level two reasoning requirement, noting it was a "close question" but that the "two terms [could] be readily reconciled." 5 F.4th at 1323.

The Plaintiff contends *Buckwalter* does not apply here because the ALJ's RFC determination restricts him to "simple and routine" instructions and the *Buckwalter* court dealt only with "simple" instructions. (Doc. 32 at 15). According to the Plaintiff, the term "routine" refers to the "repetition of a procedure that does not vary" and therefore do not conform to a level two position that requires the ability to "deal with problems involving a few concrete variables in or from standardized situations." *Id.* at 15–16.

27

In an analogous context, however, the Eleventh Circuit has held—albeit in unpublished decisions—that there is no conflict between "simple, routine, repetitive *tasks*" and jobs requiring level two reasoning. *Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022) (per curiam) (emphasis added); *Peterson v. Comm'r of Soc. Sec.*, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021) ("We conclude that there was no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning."); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (per curiam) (indicating there is no conflict between a reasoning level of two and a "limitation to simple, routine, and repetitive work"); *see also Sanchez v. Comm'r of Soc. Sec.*, 2022 WL 633381, at *4 (M.D. Fla. Mar. 4, 2022) (relying on *Buckwalter* and *Valdez* in finding no apparent conflict between jobs that require a reasoning level of two and a restriction to "understanding, remembering, carrying out, and performing, simple, routine tasks and instructions").

Although the aforementioned cases dealt with "tasks," and the Plaintiff's RFC here pertains to "instructions," *Buckwalter* indicates that this distinction is not material. 5 F.4th at 1323–24. Notably, in that case, the Eleventh Circuit described the claimant's "limitation to jobs involving the ability to 'understand, carry-out, and remember simple instructions' and to 'make simple work-related decisions' [as] similar to the limitations at issue in *Lawrence* and *Moore*," which involved tasks and "work activity," respectively. *Id.* Other courts in this District have reached the same conclusion. *See, e.g., Hedges v. Comm'r of Soc. Sec.*, 530 F. Supp. 3d 1083, 1095 (M.D. Fla. Mar. 30, 2021)

(analogizing a limitation to "simple, routine, and repetitive work," to "understanding, remembering, and carrying out simple instructions").  The Plaintiff does not cite any authority distinguishing a restriction to "simple, routine instructions," as in this case, and "simple instructions," as in *Buckwalter*.

Based upon the above analysis, I find that there is no apparent conflict between the level two reasoning requirement for the three positions of laundry worker, kitchen helper, and hand packager identified by the VE, and the Plaintiff's limitation in his RFC to "understand[ing], remember[ing,] and carry[ing] out simple and routine work-related instructions."  (R. 20); *see also Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *12 (M.D. Fla. Aug. 30, 2021) ("[T]he [c]ourt agrees with the Commissioner that no apparent conflict exists between the limitation to jobs with simple, routine, and repetitive instructions and an occupation requiring a reasoning level of two.").

## E.

In his fifth and final challenge, the Plaintiff contends that the appointment of Mr. Saul as the SSA's Commissioner pursuant to 42 U.S.C. § 902(a)(3) was unconstitutional.  (Doc. 32 at 30–32).  The Plaintiff argues that because the disability determination in this case was rendered by an ALJ and Appeals Council judges who derived their authority from Mr. Saul and the regulations he promulgated, such a determination was "constitutionally defective."  *Id.* at 31.  The Plaintiff therefore contends that the Court should remand the case for a *de novo* hearing before an ALJ "who does not suffer from [this] unconstitutional taint."  *Id.* at 32.

29

The Social Security Act provides, in relevant part, that the Commissioner "shall be appointed for a term of [six] years" and that "[a]n individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). In *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), the Supreme Court addressed a similar removal provision governing the Consumer Financial Protection Bureau and held that the appointment of an officer removable only for inefficiency, neglect, or malfeasance violated the Constitution's separation of powers. *Id.* at 2197. Approximately one year later, however, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court explained that its holding in *Seila Law* did "not mean that actions taken by such an officer are void *ab initio* and must be undone." *Id.* at 1788 n.24. Rather, the Court held that a plaintiff seeking relief on this basis must show the unconstitutional restriction actually caused him harm. *Id.* at 1788–89.

Relying on *Seila Law*, the Plaintiff contends that Commissioner Saul's appointment runs afoul of the Constitution because he was removable only for cause and served a longer term than that of the President. (Doc. 32 at 30–32). Even assuming *arguendo* that the Social Security Act's removal provision is unconstitutional, the Plaintiff does not show that this provision "inflict[ed] compensable harm" on him, as *Collins* requires. *See Collins*, 141 S. Ct. at 1789; *see also Vickery v. Comm'r of Soc. Sec.*, 2022 WL 252464, at *4 (M.D. Fla. Jan. 27, 2022) (dismissing the claimant's constitutional claims because the claimant's purported injuries were conclusory);

30

*Tibbetts v. Comm'r of Soc. Sec.*, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021) ("[E]ven assuming arguendo that the removal provision is unconstitutional, it would not necessitate a rehearing of [the p]laintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to [the p]laintiff."), *report and recommendation adopted*, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); *Perez-Kocher v. Comm'r of Soc. Sec.*, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) ("Plaintiff's contention that he is entitled to a new hearing due to [section] 9203(a)(3)'s removal clause is not supported by either *Seila [Law]* or *Collins*."), *report and recommendation adopted*, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022); *John v. Kijakazi*, 2022 WL 718667, at *5 (S.D. Fla. Mar. 1, 2022) ("Plaintiff . . . has neither shown a nexus between the removal restrictions and her claim, nor has she plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused her harm."), *report and recommendation adopted*, 2022 WL 718667 (S.D. Fla. Mar. 10, 2022).

IV.

For the foregoing reasons, I recommend:

1.      The Commissioner's decision be affirmed.

2.      The Clerk of Court be directed to enter Judgment in the Commissioner's favor and to close the case.

Respectfully submitted this 5th day of August 2022.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).


Copies to:
Honorable William F. Jung, United States District Judge
Counsel of record